First National Bank of Madison vs. Hackett, Garnishee, etc.

---

First National Bank of Madison vs. Hackett, Garnishee, etc.

Same vs. Frost, Garnishee, etc.

*October 16 — November 6, 1884.*

61  335
87  133

Voluntary Assignment: Partnership. *(1) Who must execute assignment. (2) Assignment held to be by partnership. (3) Direction as to payment construed. (4) Claims must be proved. (5) Reservation of exempt property.*

1. A partner who has in fact withdrawn from the firm so that as between himself and the other partners he has no authority or control over the property or business of the firm (although as between himself and the creditors he may still be liable for its debts), need not join in an assignment by such firm for the benefit of its creditors.

2. An assignment made by "M., H., C., and R., copartners doing business under the style and firm name of H., M. & Co., party of the first part," and granting to the assignee all the property " belonging to said copartnership, party of the first part, or in which they as such copartners have any right or interest, or which is held by any person or persons for such copartnership," is an assignment by the partnership of the partnership property and not by the individual partners executing it.

3. A direction to the assignee to " make such payment or payments to the creditors of the party of the first part as shall from time to time be directed to be made by the circuit court or the judge

thereof, as provided by law," does not prohibit him from making other payments when not so ordered, if, under the law, he may make such other payments; and such direction does not, therefore, invalidate the assignment.

4. The statute (ch. 80, R. S.) contemplates that all claims shall be verified or proved before the assignee shall pay them; and an assignment which restricts the assignee to the payment of claims proved as provided in said ch. 80, is not, therefore, invalid.

5. In an assignment by a partnership of partnership property, a reservation of "such property as is exempt from levy and sale under execution under the laws of the state," is inoperative because the firm as such is not entitled to any exemptions. Such reservation does not, therefore, render the assignment void for uncertainty. ORTON, J., dissents, being of the opinion that the reservation was intended and should be construed to mean that after the assignment had taken effect each partner might select and withdraw the amount of property allowed to him severally as exempt.

APPEAL from the Circuit Court for *Rock* County.

The facts are stated in the opinion. In each case the circuit court sustained the validity of the assignment and rendered judgment accordingly in favor of the garnishee. The plaintiff appealed. It was stipulated that one appeal should bring up all the questions involved in both cases.

For the appellant there was a brief signed by *Sloan, Stevens & Morris*, and a supplemental brief signed by *Sloan, Stevens & Morris*, attorneys, and *Tenney & Bashford*, of counsel, and the cause was argued orally by *Mr. Sloan*.

*William Ruger*, for the respondents.

TAYLOR, J. The appellant brought its action in the circuit court of Rock county upon a bill of exchange, bearing date October 6, 1883, made by the Rock River Paper Company, payable to the order of Hinman, Moody & Co., for the sum of $620.10, at fifteen days' sight, which was indorsed by Hinman, Moody & Co. to the appellant. In this action Hinman and others and the Rock River Paper Company were joined as defendants under the provisions of sec. 2609,

R. S. 1878. Accompanying the summons and complaint were affidavits of garnishment against *George W. Frost*, as garnishee of the firm of "Hinman, Moody & Co.," and *John Hackett*, as garnishee of the "Rock River Paper Co." Issues were joined upon the answers of the respective garnishees, and upon the trial of these issues judgments were rendered in favor of the garnishees, and there are separate appeals from such judgments. The respective garnishees claimed to be the legal assignees for the benefit of creditors: *Frost*, assignee for the benefit of the creditors of Hinman, Moody & Co., and *Hackett* for the creditors of the "Rock River Paper Co."

Upon the trial the garnishee *Frost* introduced in evidence an assignment which he claims was made by "Hinman, Moody & Co.," of all the property of said firm, for the benefit of the creditors of said firm, and claims to be in possession of the property of said firm by virtue of such assignment. The following is a copy of such assignment:

"This indenture, made and entered into this 5th day of November, A. D. 1883, by and between Sidney C. Moody, of Kansas City, in the state of Missouri, Moses S. Hinman, Judd M. Cobb, and James H. Reigart, of the city of Beloit, in the county of Rock and state of Wisconsin, copartners, doing business at Beloit aforesaid, under the style and firm name of Hinman, Moody & Co., party of the first part, and *George W. Frost*, who resides at said city of Beloit, in the county of Rock and state of Wisconsin, party of the second part, witnesseth: Whereas, the said copartnership is indebted to divers persons in divers sums of money, as is more particularly enumerated and set forth in a list of its creditors to be filed in the office of the clerk of the circuit court of the county of Rock, in the state of Wisconsin, within ten days after the execution of these presents, as required by chapter 80 of the Revised Statutes of the state of Wisconsin; and whereas, the said copartnership, party of the

first part, has become and is at present unable to pay said indebtedness, and are desirous of providing for the payment thereof by an assignment of all their copartnership property and effects, (except such as may be exempted from seizure on attachment or execution by the laws of the state of Wisconsin), for that purpose, as provided by chapter 80 of the Revised Statutes of the state of Wisconsin, entitled ' Of Voluntary Assignments:'

"Now this indenture witnesseth that the said party of the first part, in consideration of the premises, and in consideration of one dollar in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has given, granted, bargained, sold, assigned, conveyed, transferred, and set over, and by these presents do give, grant, bargain, sell, assign, convey, transfer, and set over, to the said party of the second part, and his successors in trust, all and singular, the lands, tenements, hereditaments, and appurtenances, goods, chattels, accounts, promissory notes, bonds, bills, debts, choses in action, claims, demands, property, and effects of every kind and description, real, personal, and mixed, belonging to said copartnership, party of the first part, or in which they as such copartners have any right or interest, or which are held by any person or persons for such copartnership, or in trust for the same (except such as are exempt from levy and sale under execution, under the laws of the state of Wisconsin), the same being more fully and particularly enumerated and described in an inventory under the oath of said party of the first part, to be filed by the said party of the first part in the office of the clerk of the circuit court of the county of Rock, in the state of Wisconsin, within ten days after the execution of these presents.

" To have and to hold the same, and each and every part and parcel thereof, unto the said party of the second part, his successors and assigns, in trust nevertheless, and to and for the uses, interests, and purposes following, that is to say:

" The said party of the second part shall take possession of the property hereby assigned, or intended so to be, and shall, with all convenient diligence, proceed to sell and dispose of the same, as is provided by law, and convert the same into money; and shall also, with all reasonable diligence, collect and receive, all and singular, the debts, dues, bills, bonds, notes, accounts, and balances of accounts, judgments, securities, claims, and demands hereby assigned, and out of the proceeds of said sales and collections shall first pay all wages owing by such copartnership to their laborers, servants, and employees, and earned by them within six months prior to the date hereof, and, out of the residue of such proceeds, make such payment or payments to the creditors of the said party of the first part as shall from time to time be directed to be made by the circuit court, or the judge thereof, as provided by law; and if, after the payment of all costs, charges, and expenses attending the execution of the trust hereby created, and the payment and discharge in full of all lawful debts due and owing by the said party of the first part, of every kind and description, that may have been proved against such copartnership, as provided in said chapter 80 of the Revised Statutes, any part or portion of the proceeds of said sales and collections shall remain in the hands or control of the said party of the second part, or his successors in trust, he shall return the same to the said party of the first part, their successors, heirs, executors, and administrators; and if, after payment in full as aforesaid, there should remain in the hands or possession of said party of the second part, or his successors in trust, any part or portion of the property or effects hereby assigned which shall not have been sold, collected, or converted into money, he shall return, reassign, and redeliver the same to the said party of the first part, their successors, heirs, executors, and administrators, by proper, full, and complete instruments of reconveyance or reassignment.

"And in furtherance of the premises, the said party of the first part do hereby make, constitute, and appoint the said party of the second part their true and lawful attorney, irrevocable, with full power and authority to do all the acts and things which may be necessary in said premises to the full execution of the trust hereby created, and to ask, demand, recover, and receive of and from all and every person or persons all property, debts, and demands due, owing, or belonging to the said party of the first part, and to give acquittances and discharges for the same; to sue, prosecute, defend, and implead for the same; and to execute, acknowledge, and deliver all necessary deeds, instruments, and conveyances. And the said party of the first part do hereby authorize the said party of the second part to sign the firm name of the said party of the first part to any check, draft, promissory note, or other instrument in writing which is payable to the order of the said party of the first part, or to sign the firm name of the party of the first part to any instrument in writing, whenever it shall be necessary so to carry into effect the object, design, and purpose of this trust.

"The said party of the second part doth hereby accept the trust created and reposed in him by this instrument, and covenants and agrees to and with the said party of the first part that he will faithfully and without delay execute the trust hereby created, according to the best of his knowledge, skill, and ability."

The assignee *Frost* showed that all the requirements of the statute in regard to voluntary assignments have been duly complied with by him as well as by the assignors.

The only questions arising on either of the appeals arise upon the face of the assignments. The appellant claims that the assignment in the case of Hinman, Moody & Co. is void on its face for several reasons: *First*, because it is claimed that the assignment itself shows that the firm of Hinman, Moody & Co. was composed at the time of the

AUGUST TERM, 1884. 341

First National Bank of Madison vs. Hackett, Garnishee, etc.

assignment of the following partners, viz., Sidney C. Moody, Judd M. Cobb, Moses Hinman, and James H. Reigart, and that the partner Moody did not execute the assignment; *second*, that on its face the assignment does not purport to be the assignment of the partnership, but is the assignment of the parties who personally executed the same; *third*, that it does not purport on its face to convey to the assignee the partnership property; *fourth*, that it restrains the assignee from paying any debts of the firm until directed to do so by order of the circuit court, and that it only provides for the payment of such debts as shall have been proved against the copartnership as provided in ch. 80, R. S.; and, *fifth*, that the assignment is void because it reserves to the assignors "such property as is exempt from levy and sale under execution under the laws of the state of Wisconsin."

The first, second, third, and fifth objections do not apply to the assignment made by the "Rock River Paper Co."

The first objection to the validity of the assignment, because not signed by Moody, who, upon the face of the assignment, appears to have been one of the partners, is fully answered by the evidence given on the trial, and by the findings of the court as to the relations which Moody held with the firm at the time of the execution of the assignment. The seventh finding of the court is as follows:

"That in the fall of the year 1882 such copartnership was carrying on the business of selling paper, and had depots of stores therefor at the cities of Beloit, Wisconsin, Chicago, Illinois, and Kansas City, Missouri; that said copartnership was then composed of the defendants Hinman, Moody, Cobb, and Reigart; that said Moody resided at and had immediate charge of the business of such copartnership at Kansas City, aforesaid, and said copartnership also owned certain real estate there situate, the legal title to which was vested in said Moody; that said Hinman, Cobb, and Reigart resided at Beloit, aforesaid, and said Hinman had immediate charge

of such store and business there located; that said depot or store at Chicago was in the immediate charge of an agent of such copartnership, who was principally supervised and directed by said Hinman; that in the fall of said year 1882 the said members thereof mutually agreed to dissolve such copartnership upon the terms and conditions substantially as follows, viz.: that said Moody should take as his sole property such real estate and personal property at Kansas City, aforesaid, at an agreed price and value, there by him stated to be the fair cash value thereof, and should assume and pay all the liabilities of such copartnership made and appearing upon its books kept at said Kansas City, and should also pay to said Hinman, Cobb, and Reigart an agreed sum of money, to secure which he gave notes which have been fully paid; that said Hinman, Cobb, and Reigart, as copartners, were to take, as their sole property, all of the property of such copartnership of Hinman, Moody & Co. located at and pertaining to the stores or depots at Beloit and Chicago, aforesaid, and such agreed sum of money, and were to assume and pay all of the liabilities of such copartnership made and appearing on its books at Beloit and Chicago, aforesaid, and were to be at liberty to continue business at such places under the name of Hinman, Moody & Co. until it should be practicable for them to discontinue so doing and publish notice of the dissolution of such copartnership, which they agreed they would try to do by April 1, 1883, but did not in fact do so prior to the making of such assignment, and until that time continued to do business at Beloit, aforesaid, under the style and firm name of Hinman, Moody & Co.; that said agreement for dissolution was made at Beloit, aforesaid, and the value of said copartnership property at Kansas City, aforesaid, was, for the purposes of such agreement, taken from the statement made or furnished by said Moody without present opportunity for verification by the other parties to such agreement, and in view thereof

it was further agreed that they might come to Kansas City and inspect such copartnership property and books there located and kept, and in case such property should be found of greater value than as represented by said Moody, he, said Moody, should account to said Hinman, Cobb, and Reigart for such difference in value; that said Moody has never, since the making of such agreement for dissolution, exercised or claimed to exercise any direction or control, or to have any right or interest in or to any of such copartnership property or business at Beloit or Chicago, aforesaid."

We think this finding is sufficiently sustained by the evidence. Taking this finding to be true, then, when the assignment was made, Moody, as between himself and Hinman, Cobb, and Reigart, was not their partner, and he had no authority or right to dictate or in any manner control the business of that firm. He cannot complain, therefore, that they made the assignment or any other disposition of the property of that firm they might see fit to make; and the fact that he may be liable for the payment of the debts of the firm, notwithstanding the agreement between the parties, does not in any way interfere with their right to make the assignment.

The reason given by the courts for holding that a part of the members of a partnership cannot make an assignment of the entire partnership property to a trustee for the benefit of creditors, is the want of authority; that the fact of partnership alone does not confer any such power; and when such assignment is made by a less number than all, it must, as a general rule, be held void for want of authority; but it will be sustained if authority be in fact shown to exist, or if the omitted partner or partners afterwards ratify it. Admitting that Moody may be liable to the creditors of the firm making the assignment, yet having before the assignment withdrawn from any management or control of the business of the firm, and conferred such management and

control upon the other members thereof, he is in no condition to object to the assignment made by them, and consequently the creditors cannot object for him.    Justice Wood-ruff, in the case of *Robinson v. McIntosh*, 3 E. D. Smith, 221, 224, speaking of an assignment made by a part of the members of the firm, says: " Whatever doubts there may be in ordinary cases of the power of some of the members of a firm to make such a disposition of the property while other members are present and equally entitled to a voice in the disposition, I do not doubt that we ought to sustain an assignment in all respects equitable and just to all parties, made in a condition of hopeless insolvency, by all those who, by the terms of the actual arrangement between the members, are the active managing partners in the business." See, also, *Forbes v. Scannell*, 13 Cal. 242, 289; Burrill, Assignm. (4th ed.), 125; *Rumery v. McCulloch*, 54 Wis. 565, 571, 572, and cases cited.

The second and third objections, that the assignment does not on its face purport to be an assignment by the partnership or of the partnership property, is, we think, entirely unsupported.    In the description of the parties to the assignment, the party of the first part is Moody, Hinman, Cobb, and Reigart, copartners, doing business at Beloit under the style and firm name of " Hinman, Moody & Co."    We think this clearly indicates that the party making the assignment is the partnership doing business under that name at Beloit, and not the individuals who compose such partnership.    If it be held that the party of the first part described in the assignment be the partnership doing business under the style and firm name of " Hinman, Moody & Co." at Beloit, then there can be no chance for any doubt as to what property is conveyed to the assignee by the assignment.    In the granting clause the property conveyed is described as belonging to said copartnership, party of the first part, or in which they, as copartners, have any right or interest, or which is

held by any person or persons for such copartnership, etc. To construe this assignment as anything other than an assignment by the copartnership of the copartnership property would be to do violence to the language used, as well as a perversion of the clear intention of the parties as expressed by such language.

It is urged that the assignment is void because it directs the assignee to "make such payment or payments to the creditors of the party of the first part as shall from time to time be directed to be made by the circuit court, or the judge thereof, as provided by law." It is insisted with great earnestness by the learned counsel for the appellant that under this direction in the assignment the assignee would not be at liberty to make any payments to creditors out of the proceeds of the assigned property until directed to do so by some order or direction of the court or judge, and that it is, therefore, an unlawful restriction upon his duties under the statute. It is said that under the statute he may make payments without the direction of the court, and it may be admitted that such is a proper construction of the powers of the assignee under the law. The language above quoted from the assignment should not receive a construction which would invalidate the assignment, if any other construction can be reasonably given to it which will uphold it; and, when read in connection with what immediately follows it, it means nothing more than that the assignee shall make payments to the creditors from time to time when directed by the court or judge as provided by law, but it does not prohibit him from making other payments when not so ordered, if, under the law defining his powers as assignee, he may make such other payments.

It is also urged that because he is restricted to making payment of claims proved against such partnership as provided in ch. 80, R. S., the assignment is void. It is claimed that the assignee may lawfully pay creditors of the as-

signors who do not prove their claims as provided by said ch. 80. We think the statute contemplates that all claims shall be verified or proved by affidavit before the assignee is authorized to pay, and that he would be violating his duty as assignee if he paid a claim which was not so proved or verified. Sec. 1698, R. S., requires the assignee to "give notice of the making of the assignment, and of his post-office address, and that every creditor of such assignor is required to file, within three months, with such assignee or the clerk of the circuit court, naming him and his post office address, on pain of being deprived of a dividend, an affidavit setting forth his name, residence, and post office address, the nature, consideration, and amount of his debt claimed by him over and above all offsets. Such notice shall be given by publishing the same once in each week for three successive weeks in a newspaper in the county, or, if none, in an adjoining county, and by mailing a copy of such notice to each creditor at his residence, of which the assignee shall have information." Sec. 1700 provides that "every creditor of the assignor who shall not file such an affidavit within the time limited as aforesaid shall not participate in any dividends made before his claim is filed. Debts to become due as well as debts due may be proved, a rebate of interest being made to the time of the dividend on such as do not bear interest, and interest being computed, when demandable upon others, to the time of dividend. The assignee may pay, or the court may order a dividend to be paid, at any time, making such provision as shall be necessary for the protection of claims in dispute."

These provisions clearly indicate that all claims against the assignor shall be verified or proved in the manner above set forth, before payment of any dividend thereon can be demanded of the assignee. The assignment does not, therefore, unlawfully restrict the assignee in the payment of the debts due from the assignors. The language used cannot be

fairly construed to mean that the assignee shall pay only such demands as shall be proved or verified within three months after notice of the assignment, and therefore exclude from the benefits of the assignment those who fail to make proof within that time. By ch. 80, they may prove their claims after that time, and receive the benefits of the trust fund, except that such claimants shall not participate in any dividends made after the expiration of said three months and before their claims are proved. The restriction is to the payment of such claims as may be proved as provided in ch. 80, not to those which shall be proved within three months after notice of the assignment. We are very clear that the provision in the assignment does not in any way conflict with the duties of the assignee under the statute, but is in strict conformity with such duties. It has been held that, independent of any statute requiring the proof of claims against the assignor before a dividend shall be allowed to the creditor, the assignor may, by the terms of the assignment, require the assignee to require proof of the claim before payment be made. Burrill, Assignm. (4th ed.), § 229; *U. S. v. Bank of U. S.* 8 Rob. (La.), 412; *Ashurst v. Martin*, 9 Porter (Ala.), 566; *U. S. Bank v. Huth*, 4 B. Mon. 423; *Janes v. Whitbread*, 20 L. J. C. P. (N. S.), 217; 5 Eng. L. & Eq. 431.

The fifth objection, that the assignment is void because it reserves to the assignors "such property as is exempt from levy and sale under execution under the laws of the state of Wisconsin," does not, especially in the case of an assignment of partnership property by the firm, render the assignment void. Under the decisions of this court, a copartnership is not entitled to any exemptions out of the copartnership property. The reservation in the assignment to the copartnership, the party making the assignment, of exemptions out of the partnership property, is simply a reservation of no part of the property assigned; it is entirely ineffectual

as a reservation, and all the property of the firm passes to the assignee, notwithstanding the reservation. *Russell v. Lennon,* 39 Wis. 570; *Wright v. Pratt,* 31 Wis. 99; *Lininger v. Raymond,* 9 Neb. 40, 43; *Dodd v. Hills,* 21 Kan. 707. In the case of *Russell v. Lennon, supra,* this court held that a joint action by the members of a firm could not be maintained to recover property alleged to be exempt from levy and sale on execution. The reservation in the case at bar, being of the property owned by the partners jointly to them jointly, is simply nugatory and void under the decisions above cited. So far as the opinion in the case of *Goll v. Hubbell, ante,* p. 293, lately decided by this court, is in apparent conflict with this opinion, we can only say that the point upon which this opinion is based was not presented by counsel on the argument in that case, and was overlooked by this court in consultation.

If it be urged that the reservation in the assignment of property exempt from execution should be construed in view of the decision of this court, viz., that a partner may claim an exemption, with the consent of his copartners, out of the partnership property, and select such exemption out of the copartnership property even after seizure upon execution (see *O'Gorman v. Fink,* 57 Wis. 649), and therefore there is a reservation to each of the several partners, from the property of the firm, of goods of the value of $200, to be selected by each, with the consent of the others, after the execution of the assignment; still we think that the great weight of authority would be in favor of the validity of the assignment, notwithstanding such reservation, and that if the property was, in fact, selected and separated from the partnership assets before the same were, in fact, actually delivered to the assignee, such reservation and retention by the partners would not avoid the assignment. See the following authorities: Burrill, Assignm. (4th ed.), §§ 133–151; *Brooks v. Nichols,* 17 Mich. 38; *Rosenthal v. Scott,* 41 Mich.

632; *Mulford v. Shirk*, 26 Pa. St. 473; *Heckman v. Messinger*, 49 Pa. St. 465, 473; *Peterman's Appeal*, 76 Pa. St. 116; *Garnor v. Frederick*, 18 Ind. 507; *Walker v. Newlin*, 22 Kan. 106, 109; *Knefler v. Shreve*, 78 Ky. 297, 306; *Baldwin v. Peet*, 22 Tex. 709, 718. We do not, however, wish to be understood as determining this last question; we deem it entirely unnecessary upon these appeals, as we hold that, upon the face of the assignment, the reservation is nugatory, there being no exempt property assigned by the deed of assignment, and nothing, therefore, to which the reservation can apply.

Orton, J. I am unable to agree with my brethren as to the effect of the following clause in the granting part of the assignment: "Except such as are exempt from levy and sale under execution under the laws of the state of Wisconsin." This court has held that such a clause in a chattel mortgage rendered it void for uncertainty, and in an assignment rendered it void for uncertainty and as an unlawful reservation. It is held that this reservation is inoperative and void in this assignment because it is to the partnership, and a partnership, as such, has no exemptions, and that therefore there is nothing reserved, and no uncertainty in the assignment to render it void. But is this reservation alone to the partnership as such? The language is very broad and general: "Except such as are exempt," etc. This court has held that the partners are entitled each to their exemptions out of the partnership property, when the partnership has been dissolved and they have severed their interests in the exempted property. Does not this language mean just such lawful exemptions, and no other? Does it mean only an exemption to the firm when the firm has no exemption? It seems to me that this would be a forced limitation of its obvious meaning. The assignment, although a partnership assignment, had to be made by the

partners, and they make this exception for their benefit, and not for the benefit of the firm which is dissolved and ceases to exist by virtue of the assignment. It is a reservation to somebody, and when it is made in and by an executed assignment which puts an end to the partnership, it is certainly not to the partnership, for there is none; but the several partners may then sever their interests and have their exemptions; and this only will give any effect to the language. The vice of such a reservation is that, when the assignment is fully executed by the delivery of the property to the assignee, the exception of the exempted property out of it renders the assignment void for uncertainty. Not a single thing is certainly assigned, for it may be claimed as exempt, and the property assigned and that exempt is mingled and yet to be separated by the parties. And, further, that it allows of an unlawful interference with the assigned property by the assignor after the assignment. It seems to me that the language in its natural meaning, "except such as are exempt," should be so construed as to allow the partners, after the assignment had taken effect by the delivery of the property, to select their exemptions.

It is very clear to my mind that the assignors so understood it, and intended to express such a meaning by it, and that the assignee so understood it also. A practical construction to such effect was placed upon it by the partners by severing their interests and selecting their exemptions some ten days after the assignment was fully executed and the assignee had entered upon his trust. Such a clause in the written instrument would have no effect or operation if, before the assignment had taken effect by the delivery of the property to the assignee, the exemptions had been taken out; for then it would have been rendered certain, and the property delivered would alone have passed to the assignee. But when all the property goes into the possession of the assignee, subject to the right of the assignor to afterwards

select out of it his exempt property by virtue of such an exception in the assignment, then there is an incurable uncertainty in the assignment, and an unlawful reservation to the assignor. The title to what is excepted out of and reserved from the property assigned has never passed to the assignee, and it is an uncertain part, to be determined and made certain after the assignment has been completed by a delivery; and if after, then at any time thereafter. If we hold that this exception is void, then if the assignees have, in good faith, delivered up the exemptions to the partners, as both he and they understand this exception to authorize, shall the assignee be liable to the creditors therefor? I do not think such a plain exception as this is, should be so construed as to lead to such a result; and such a result, in view of the broad language of the exception, would seem to be in violation of the principle often recognized by this court, that our exemption laws should be construed liberally in favor of exemptions.

*By the Court.*— The judgment of the circuit court is affirmed on each appeal, and the cases are remanded.