First National Bank of Dubuque vs. Baker, Garnishee, etc.

See notes to this case in 32 N. W. Rep. 551, 552.— Rep.

First National Bank of Dubuque, Appellant, vs. Baker, Garnishee, etc., Respondent.

*March 3 — March 22, 1887.*

Voluntary Assignment. *(1) Preference of claims for wages, etc.: Repeal by implication. (2) Partnership: Exemptions. (3, 4) Fraud: Evidence: Acts of assignor: Preference of debt to assignee. (5) Place of assignment: Domicile.*

1. Ch. 48, Laws of 1885, which directs an assignee to pay first the claims of servants, etc., for personal service performed within three months prior to the assignment, does not repeal by implication ch. 349, Laws of 1883, which authorizes preferences in the assignment for wages earned within six months prior thereto.

2. An assignment by partners purported to convey to the assignee all the partnership property " not exempt to them by the laws of the state," and a schedule contained a claim by each partner of certain property as being exempt. All of the property, however, was delivered to the assignee and remained in his possession, and the assignors never in fact claimed any property as exempt. *Held,* that the exemption clause did not invalidate the assignment.

JANUARY TERM, 1887.                    443

First National Bank of Dubuque vs. Baker, Garnishee, etc.

3. The fact that after the execution of an assignment the assignor, in pursuance of a prior contract, gave to one of his creditors an order upon one of his debtors, which was paid, did not invalidate the assignment.

4. The fact that, before the assignee knew that an assignment was contemplated, the assignor turned over to him notes of the value of $215, in discharge of a debt of $90 due him, and upon his agreement to pay $100 to an employee of the assignor, there being nothing to show that the transaction was not in good faith, is *held* not to invalidate the assignment subsequently made.

5. One partner had never resided in this state. The other partner had resided in Crawford county (where the firm had its only place of business) for six or seven years prior to the assignment. Some months prior to the assignment the wife of the latter partner left the state because of sickness, and her husband thereupon broke up housekeeping and sold some of his furniture, but remained in Crawford county attending to the business until about the time of the assignment. *Held*, that the assignment was properly made in Crawford county.

APPEAL from the Circuit Court for *Crawford* County.

The action was commenced against J. L. Nowlin and W. H. Robison, who constituted the firm of J. L. Nowlin & Co.; and *C. W. Baker* was summoned as garnishee. The garnishee answered, denying all liability as such, and justifying his possession of certain property of defendants under and by virtue of an assignment thereof to him for the benefit of their creditors. The answer of the garnishee further alleged that certain railroad ties in his possession, of the value of $400, were exempt from execution as the stock in trade of the said defendants. Issue was taken upon the answer of the garnishee, and upon the trial the court held the assignment valid and directed the jury to find a verdict in favor of the garnishee. From the judgment entered upon such verdict the plaintiff appealed. Other facts are stated in the opinion.

*C. S. Fuller*, for the appellant.

*John D. Wilson*, for the respondent, argued, among other things, that the exemption clause was inoperative because

the firm as such had no exemptions, and, the assignors never having claimed the property, the assignment was not invalidated thereby. *Goll v. Hubbell*, 61 Wis. 293; *First Nat. Bank v. Hackett*, id. 335; *Bates v. Simmons*, 62 id. 69; *McNair v. Rewey*, id. 167; *Zielke v. Morgan*, 50 id. 560. The acts of the assignors subsequent to the assignment could not invalidate it. *Emerson v. Senter*, 118 U. S. 3; *Hammel v. Schuster*, 65 Wis. 669.

Cole, C. J. The garnishee claims the property in controversy as assignee under an assignment made by J. L. Nowlin & Co., bearing date August 3, 1885. It is insisted that this assignment is void for various reasons.

First, it is said it purports to give preferences to the claims of employees for wages earned within six months prior to the assignment, which is not permitted since the enactment of ch. 48, Laws of 1885. Ch. 349, Laws of 1883, expressly authorizes preferences for the wages of laborers and employees earned within six months prior to the making of such assignment; but it is said this provision was modified, or by implication repealed, by the subsequent statute. There is no necessary conflict between the two statutes, and they may well stand together. The law of 1883 allows preferences for the wages of laborers for six months to be given in the assignment itself; while the law of 1885 requires the assignee to first pay the claims of all servants, clerks, and laborers for personal services performed within three months prior to the assignment, whether these claims are preferred in the assignment or not. In other words, this law gives a general preference to this class of claims over all other debts owing by the assignor except those which are expressly mentioned. The latter statute does not profess to repeal the former, and if it does so it is by implication. But considering the scope and object of the two statutes there is no necessary conflict in their provisions.

Another objection is that the exemption clause in the assignment renders it void. The assignment was made by the members of the firm of all the partnership property and effects of every kind for the benefit of creditors. In the preamble it is stated that all the property is assigned "not exempt to them by the laws of the state of Wisconsin, a schedule whereof is annexed of such exempt property." In the assignment proper there is no reference to any schedule whatever; but in the schedule containing a list of debts due laborers and employees is what purports to be a claim made and signed by each partner of a quantity of railroad ties as exempt as stock-in trade out of the property assigned. But it is an undisputed fact that all the ties mentioned in this claim as being exempt were delivered to the assignee, and none of them have ever been in the possession of either of the members of the firm, nor is there any evidence that any of this property is claimed by them as exempt. Of course, an exemption in favor of a copartnership would be wholly inoperative (*Russell v. Lennon*, 39 Wis. 570; *First Nat. Bank v. Hackett*, 61 Wis. 335), and there is no pretense that the partners ever attempted to sever and set aside any ties as exempt, or even to claim them, but all the ties were delivered to the assignee and were held by him with the other assigned property until they were taken from his possession by the sheriff on the attachments. So, upon the facts, we think the exemption clause did not invalidate the assignment.

There were a number of facts and circumstances disclosed on the trial which it is claimed showed that the assignment was fraudulent as to creditors. The circuit court in effect held that the evidence was not sufficient to justify the jury in finding that the assignment was fraudulent, and directed a verdict for the defendant. It is insisted that the court erred in this ruling, and that there were several transactions which tended to prove an illegal and fraudulent preference of creditors which should invalidate the assignment, and

that the case should have been submitted to the jury. The learned circuit judge gave an opinion which is so clear and satisfactory upon this branch of the case that we cannot do better than make some excerpts from it as expressing our views upon the objections taken to the assignment. The circuit judge says:

" The fraud which is suggested rests upon a few circumstances. First, it is said, and there is proof, that Nowlin, on the 25th day of June last, received $1,000 from Mr. Linderman at the Bank of Viroqua, and that upon July 28th he received $1,305.63 from the Bank of Viroqua, and it is suggested that some of this money was retained by him at the time the assignment was made, in fraud of the creditors of the firm of Nowlin & Co. The proof shows that out of the $1,000 received June 25th he paid between $800 and $900 to the miller for flour that the firm had bought, and paid it about the time the $1,000 was received, and that the balance of the money was applied in payment of the debts of the firm before the assignment. Mr. Nowlin has testified to certain specified amounts paid out by him from the $1,305.63 received, amounting, all told, to $781. He says that his memorandum of payments out of that fund,— which he has not with him because he had no notice that this subject was to be inquired into,— would show that all of that money, with the exception of $7 or $8 he himself retained, and $75 paid to his wife, was paid out in discharge of the indebtedness of the firm. There is no proof to controvert this statement by him. It would seem, therefore, that these two sums of money received by him from the Bank of Viroqua are satis-factorily accounted for. But even if, at the time of the assignment, he had in his pocket or under his control several hundred dollars of this fund, I do not think that that would invalidate this assignment. The legal title to such money would vest in the assignee, and he would be entitled to all the processes of the law applicable thereto to obtain it.

First National Bank of Dubuque vs. Baker, Garnishee, etc.

" Again, it is said the assignment is invalid because after August 3d, when the papers were executed, Mr. Nowlin gave an order upon Ayer, of Chicago, for $169.32 to Mr. Vaughan, of Wauzeka, which money Mr. Vaughan obtained on such order. The proof shows that Nowlin & Co., as early as January last, had a contract with Ayer, who is an extensive tie buyer, to sell ties at a fixed sum,— ties of a good quality at forty-two cents; that Mr. Nowlin, before this assignment was made, had said to Mr. Vaughan that if he would put the ties that he had there at Wauzeka in such contract, he should receive for them the money that Ayer would pay him; that, before the assignment was made, the inspector of Ayer inspected the ties and they then became the property of Ayer; that Ayer then became indebted to Nowlin & Co. for the price of said ties at forty-two cents each; that, after the assignment was executed, Mr. Nowlin signed an order, in the name of the firm of Nowlin & Co., upon Ayer, and gave it to Mr. Vaughan, and that Mr. Vaughan received the $169.32. This proceeding seems to have been in good faith, but it may have been illegal. If it was, it does not invalidate the assignment that before that time had been made, although the payment to Mr. Vaughan of that sum of money due to Nowlin & Co. may make him responsible to the assignee for the sum, and it may be the duty of the assignee to demand and recover it of him.

" Another reason why it is said this assignment is invalid is that Nowlin & Co. owned a span of ponies, and that Mr. Nowlin drove these ponies out of the state before the assignment. Mr. Nowlin says that these ponies were in fact sold to his daughter some time last winter, but were retained by him until a short time before the assignment, when he took them over to Iowa, and delivered them to her. If his testimony is true,— and there is nothing to contradict it, and he certainly seemed a fair witness,— there is not a *scin-*

*tilla* of fraud about this; but if it were not true, and the ponies actually belonged to Nowlin & Co. at the time they were taken out of the state, that would not invalidate this assignment.   These ponies are not exempted from the operation of the assigment, and the assignment vested the title to them, as well as to all the other property of the company, in the assignee; and the assignee himself, or any creditor if the assignee himself fails to do it, may bring an action to recover the possession of those ponies.

" Again, it is said that there is a note of King of $97 that is not in the inventory.   There is no direct proof before this court that any note of King's existed at the time this assignment was made.   It is suggested that there is a memorandum somewhere in the books and papers that shows that there was such a note in July.   The note is said to be for $97.   The assignee says that he knows nothing about it. It is too well established for dispute that the omission of an item like this from the inventory will not invalidate the assignment.

" Again, it is said that this assignment is invalid because four notes were turned over to the assignee, prior to the time of the assignment, in discharge of a debt due by the firm to him, of the amount of $90, and upon an agreement that he would pay $100 to an employee of the firm named Lewis, to whom was due, all told, something over $160. The proof shows that before the assignment, and before *Mr. Baker* knew that an assignment was contemplated, Mr. Nowlin asked him to advance to Lewis, whom the firm owed, $100, and that if he would do so he would turn over to him four notes, then specified, of the value together of $215, in payment of his claim against the firm of $90, and for the $100 to be paid to Lewis; that Lewis came in, and assented to the arrangement, and agreed to take *Baker* for $100; that the notes were not delivered to *Mr. Baker* at the time the agreement was made, but were delivered to

him by Mr. Nowlin in the city of Prairie du Chien upon the day the assignment was made. The proof shows that *Mr. Baker* has paid to Mr. Lewis the $100. There is nothing in the testimony to indicate that the purpose of this transaction, upon the part of Mr. Nowlin, was to cheat or defraud creditors, or to give an unlawful preference to *Mr. Baker*, and there is no proof that this proceeding was not wholly in good faith upon the part of *Mr. Baker*. It cannot be said that this transaction invalidates the assignment. The only possible effect that the proceeding can have adverse to either Nowlin or *Baker* is this: If *Mr. Baker* received these notes, knowing, or having good reason to believe, that Nowlin & Co. were insolvent, he would get no title to them, and can be compelled by this court, in the settlement of his account, to account for these notes and to take his percentage as a creditor if his claim be properly proved. In that event he would of course be subrogated to the rights of Lewis, who, as an employee, was entitled to the payment of the full sum due him for wages, and the proof shows that the amount he was to receive was $30 per month and his rent; and the sum total due him at the time *Baker* agreed to pay him was only about $160.

"The only other claim made why this assignment is invalid for matter extraneous is this: That Nowlin & Co. were not residents of the state of Wisconsin. It is undisputed that Robison never resided in this state, but has for many years resided in the city of Dubuque. The proof shows that, for six or seven years before the assignment, Mr. Nowlin was a resident of this county of Crawford, and for about four years of that time a resident of Soldiers' Grove. It is true, there is testimony to show that his wife left Soldiers' Grove about April or May last, and went to Viroqua, where she remained a month, and subsequently went to Dubuque to be with her daughter who resided there. The proof shows that the family of Mr. Nowlin

are grown and all married, and that it was he and his wife only who resided at Soldiers' Grove; that his wife became sick, and because of her sickness went away from Soldiers' Grove, and has remained sick ever since, and for that reason he broke up housekeeping there and sold off some of his furniture, but he remained, up to about the time of this assignment, at and about Soldiers' Grove, attending to his business interests as he had done for several years previous. There is no question that the firm of Nowlin & Co. did business in Crawford county; that Soldiers' Grove was their place of business; that they had no place of business outside of this state; and that, as a firm, Nowlin & Co. existed in the county of Crawford and nowhere else. I have no question that the residence of this firm was such that they could make an assignment of their property in the state of Wisconsin and nowhere else. No one of these particular matters, suggested as being sufficient to invalidate the assignment, is sufficient to invalidate it, and all taken together do not invalidate the assignment."

These remarks fully dispose of all the objections taken to the validity of the assignment. Upon the evidence, therefore, we think it was not error to withdraw the question as to its validity from the consideration of the jury; for a verdict that the assignment was invalid and fraudulent as to creditors would have been wholly unwarranted.

*By the Court.*— The judgment of the circuit court is affirmed.