In re FRIEDERICK et al.

(District Court, W. D. Wisconsin. June 9, 1899.)

No. 82.

BANKRUPTCY—EXEMPTIONS—PARTNERSHIP ASSETS.

Under a statute (Rev. St. Wis. § 2982, subd. 8) exempting from execution "the stock in trade of any merchant, trader, or other person, used and kept for the purpose of carrying on his trade or business, not exceeding $200 in value," in case of the bankruptcy of a mercantile partnership, where the firm has stock in trade, but there are no individual assets, each partner, with the consent of the other, is entitled to have the statutory exemption set apart to him out of the firm property.

In bankruptcy. On review of decision of referee in bankruptcy.

Murphy & Kroncke, for bankrupts.
Tenney, Hall & Tenney, for creditors.

BUNN, District Judge. On May 3, 1899, George J. Friederick and Sever Nelson, partners engaged in the retail grocery trade on State street, in Madison, filed their petition in voluntary bankruptcy, and on May 4th were duly adjudged bankrupts by this court, both as partners and individuals. In their petition they each testify that they have no individual property, real or personal, except such exemptions as they may select under the exemption laws of Wisconsin, and they claim the right to have their exemptions set apart by the trustee from the partnership property turned over to him under the law. On May 17th C. K. Tenney, of Madison, was appointed and qualified as trustee, and thereupon the bankrupts applied to him to set off their exemptions from the partnership property, which the trustee refused to do, and a petition was immediately made to the referee to allow the exemptions, who decided that no exemptions could be allowed from the partnership property. An appeal was taken from the decision of the referee, and the question has been argued, and is now for decision by the court. The exemptions are claimed under subdivision 8 of section 2982 of the Revised Statutes of Wisconsin, which provides that the following property shall be exempt, to wit: The tools, implements, and stock in trade of any mechanic, miner, merchant, trader, or other person, used and kept for the purpose of carrying on his trade or business, not exceeding two hundred dollars in value. The bankrupt law of 1898 provides as one of the duties of trustees under the law that they shall respectively set apart the bankrupt's exemptions, and report the items and estimated value thereof to the court as soon as practicable after their appointment. The referee disallowed the claim of the petitioners on the ground that the property was partnership property, and there had been no severance. But I think this question was met and disposed of by the supreme court of Wisconsin in O'Gorman v. Fink, 57 Wis. 649, 15 N. W. 771, in favor of allowing the exemptions. In this case the entire partnership stock had been levied upon and was in the hands of the marshal under an execution issued out of the United States circuit court. There was no severance in fact, and, indeed, there could be none. The

property was levied upon as partnership property for a partnership debt, and taken from the possession of the partners. A partner sued to recover his exemptions. The question, as stated by the court, for its consideration, was this: Was the plaintiff entitled to a separate exemption to the amount of $200 out of the partnership property in the possession of the defendant under a levy on executions against the partnership where the other members of the firm consented that he should have the benefit of such exemptions? The court held that he was. The language of Chief Justice Cole in deciding the question is quite as applicable to the case at bar as to that. He says:

"But it is said that the plaintiff, as an individual member of the firm, was not entitled to his exemption out of the firm property so long as it retained its character as firm property. In other words, it is claimed that the exemption statute relates to and is intended to deal with property which is owned in severalty, or with property which in its nature is severable, where the right of severance exists, and that the exemption does not and cannot attach to the property of a firm, which does not belong to either partner as his own before an actual division by the partners. On this subject Mr. Freeman, in his work on Executions, uses this just language: 'It often happens that property designated as exempt by statute belongs to two or more persons, either as co-tenants or co-partners. The question then arises whether this property must be treated as exempt to the same extent as if held in severalty. The answers to this question are irreconcilable, and the opposing opinions are both supported by very respectable authorities.' Section 221."

## The court then proceeds to say:

"The question whether one partner, with the consent of the other partners, can claim an exemption out of the firm property in a case like the one before us, has never been passed upon by this court. Therefore, in view of the conflict of judicial opinion on the subject, we feel quite free to adopt that rule which seems most in harmony with our decisions under the exemption laws, and the humane spirit of these statutes. It is quite unnecessary to observe that this court has deemed it a duty to construe liberally these laws, in order to carry out the manifest purpose of their enactment. * * * In the Russell Case (Russell v. Lennon, 39 Wis. 570) the plaintiffs were partners doing business as tinners and jobbers. The levy was upon their tools and stock in trade for a partnership debt. The learned chief justice, in the opinion, says: 'We have no doubt that in proper cases each member of a partnership is entitled to his separate exemption out of the partnership property, and that the partnership property, after levy, may be severed by the partners, so that each partner may have his several exemption. But it seems to us to be as indefensible to extend the personal privilege of exemption to a partnership, as such, as to extend it to a corporation aggregate.' It will be seen that there is here a clear and distinct intimation that each member of a partnership is entitled to his separate exemption out of the partnership property, and the chief justice says that after the levy the partnership property may be severed by the partners so as to give each partner his several exemption. In that case the court was not called upon to state what acts were necessary to be done by the partners after a levy to make a severance of the partnership property, nor do we well see what more the partners could do to accomplish this end than consent that each should have his exemption, and exercise his power of selection. This, in contemplation of law, ought to amount to a severance, so that the several right of each partner would attach to the portion by him selected. Unless the severance can be made in this way, it is very evident that the right of each partner to his separate exemption out of the partnership property after levy cannot be protected or enforced; for certainly the partners cannot, after a levy, take possession of the corpus of the partnership property, and make a division of it among themselves. This, obviously, is impracticable. Therefore, unless the mutual consent of the partners that each shall have his exemption and make his selection from the partnership property has the effect to partition or sever the joint property so that the several exemption will attach to the por-

tion selected, no exemption in many cases could be had. But where all the partners demand the exemption, each must be deemed to consent that the others have it, and make his individual selection. This. we think, was all the court in the Russell Case deemed necessary for the partners to do in order to make a severance of the partnership property, and so change its character that the statutory right would attach as in goods held in severalty. We are well aware there are most respectable adjudications against this view."

This case was decided by the unanimous opinion of the five judges then constituting the court. It is just and sound in its conclusions, and has never been overruled or qualified by any subsequent adjudication. In my judgment, it meets every condition and requirement of the case at bar for the allowance of these claims. In most of the cases since decided in which the claims of partners have been disallowed it has been either where there was an element of laches, or where the question arose between third parties, neither of whom were claiming the exemptions. Of course, where partnership property is levied upon under an execution against the partnership, the claims to exemption should be made without delay, or they will be waived. That rule is just, and necessary, in order that the creditor, in case the claim is allowed, may proceed to secure his debt by a further levy or in some other manner. If the debtor is guilty of any laches in making the claim, it will be held to constitute a waiver of his right, although it is held that he cannot, by express agreement in advance, waive his exemption. There is no conclusive presumption, where partnership property is levied upon, that the individual partners may not have individual property more than enough to satisfy all their claims under the exemption laws of the state. But, while this is so, it must be remembered that where persons are engaged in trade as partners it is not at all probable that they will also have stock in trade on their individual account, because this would be inconsistent with the partnership obligations. So that in general, if exemptions cannot be allowed to the individual partners out of partnership property, they cannot be allowed at all, because there will be no property to which the exemptions could apply. But where it affirmatively appears, as in this case, that they have no other property, and they are guilty of no laches, and there is no question of intervening rights, there would seem to be no good reason, all the partners consenting, as in this case, and joining in the petition, why they should be denied the benefit of the law, which was intended to apply equally to all. No reason but a purely technical one has ever been suggested why men engaged in business as partners, and having all their means employed in that way, should not be entitled to the benefit of our exemption laws, as well as persons employed in trade on their individual account. There is no reason why a man's family should be turned into the streets without a dollar to help themselves with, or to keep off starvation, by the greed and rapacity of creditors, in the one case more than in the other. Our exemption laws are liberal. They were so framed and intended by the wise framers of our constitution and by our legislature, and they have received a liberal and sensible construction by the courts to accomplish the beneficent purpose of the fram-

ers of our constitution and laws. Until the above decision by our supreme court, it was an open question whether any exemptions could be allowed to partners who had all their means employed in partnership trade. But after that adjudication, which goes the whole length and breadth of allowing the exemptions, though no actual severance of the property has taken place, and though none could take place, after the property is seized and taken out of the possession of the partners, there would seem to be not much warrant for any court, desiring to do obedience to the liberal and just rule there laid down, of resorting to any technicalities to defeat the exemption. Looking at the history of the law, in connection with its plain provision for all merchants and traders, it is difficult to see how any other conclusion could have been arrived at by the court. The exemption comes, not only within the evident purpose and spirit of the law, but within the clear and undoubted letter. The exemption of not exceeding $200 of the stock in trade of every merchant and trader residing and doing business within the state is provided for in express terms. No hint or suggestion is found in the law itself that it was intended to apply only to individual traders, and not to the members of a partnership. A person engaged in trade jointly with another is no less a merchant and trader than one so engaged in trade on his individual account. No doubt a large majority of the merchants of the state are engaged in joint trade as co-partners with others. They need the same measure of protection in case of business disaster as persons engaged in trade on individual account, and the law, in terms, gives it. There should be some very substantial reason for depriving them of their right to the protection which the law gives. When this clause of the law was first enacted in the early history of the state, it did not contain any express provision for merchants and traders. The provision ran: "The tools, implements and stock in trade of any mechanic, miner, or other person, * * * not exceeding $200 in value." etc. It was contended that this provision did not cover the case of merchants, but only mechanics and miners and other persons similarly situated,—like well diggers, who used tools and implements, and incidentally had a little stock in trade in connection with their business,—because it was said that merchants are quite as prominent a class as mechanics and miners, and therefore, if the legislature had meant to include them, it would have named them, and not left them to be included under the general term of "other persons." But the courts gave the clause a liberal construction, and held that it applied to merchants. Afterwards the legislature amended the law by inserting the words "merchant and trader," so as to leave no doubt about its meaning. Since this change in the express terms of the law, there would seem to be no good reason for finding technical reasons to defeat the liberal and beneficent policy of the statute. Perhaps, in view of these plain provisions, both before and since the decision of O'Gorman v. Fink, the objection, which is quite technical in character, of a want of severance, has been employed quite as much as its intrinsic merits would warrant, both in this court and in the courts of the state, to

defeat the purpose and intent of the legislature to allow exemptions to persons engaged as partners in joint trade. The case of In re Hughes, 8 Biss. 107, Fed. Cas. No. 6,842, decided in this court in 1877,—five years before the decision of the supreme court in O'Gorman v. Fink,—was probably correctly decided on the facts of that case, under the adjudications as they then stood. In cases of levy upon execution there could be no actual severance. But the court in O'Gorman v. Fink said the mutual consent and agreement of the partners to take, each, his exemptions, amounts to a severance in law. If the mutual consent and agreement of the partners works a severance in the case of a levy, why not in the case of a voluntary petition in bankruptcy, which only provides for exemptions being set apart after the property has come into the possession of the trustee? Assume that this is a fiction. Very well. The courts of common law have always been in the habit of resorting to fiction for the purpose of doing justice. But they do not resort to fiction for the purpose of working injustice. From the days of Lord Mansfield and Chief Justice Marshall to the present time the law has perhaps been ameliorated and improved quite as much by the adjudications of great judges as by express legislative enactment. But there would seem to be no great need of judicial legislation or resort to fiction in order to do justice under a statute so plain and obvious in its meaning as the exemption law in question.

If these exemptions are to be allowed to the individual partners out of partnership property in cases where they have no individual property, what possible difference does it make to the creditors whether the exemptions are selected and taken out before the property is turned over to the trustee or immediately after? It is quite evident that it is not contemplated by the bankrupt law that they should be taken out before, because it provides for the trustees setting apart and fixing a value upon the exemptions. The fixing a value of course could not be left to the debtor. He might fix a value that would take the entire stock. That must be done under the auspices and direction of the trustee, and to that end he should have possession of the entire estate. I am unable to see why the course pursued in this case by the debtors was not the proper one under the law. They filed their petition, and turned over all the property, claiming their exemptions at the same time. I think it was the duty of the trustee to have set apart the exemptions, and cause a proper valuation of them to be made.

In some of the cases decided since that of O'Gorman v. Fink the question has arisen between creditors upon the validity of an assignment under the state insolvent law. This was the case in Bank v. Hackett, 61 Wis. 335, 21 N. W. 280. There was an effort made to set aside the assignment because the partners had reserved partnership property to themselves as exempt. In sustaining the assignment the court said:

"A partnership is not entitled to an exemption out of the co-partnership property. The reservation in the case at bar, being of the property owned by the partners jointly to them jointly, is nugatory and void."

In Bank v. Baker, 68 Wis. 442, 32 N. W. 523, an assignment by partners purported to convey to the assignee all the partnership property "not exempt to them by the laws of the state," and a schedule contained a claim by each partner of certain property as being exempt. All of the property, however, was delivered to the assignee, and remained in his possession, and the assignors never in fact claimed any property as exempt. It was held that the exemption clause did not invalidate the assignment.

In Bong v. Parmentier, 87 Wis. 129, 58 N. W. 243, partners had assigned for the benefit of creditors all their property "except such as is exempt from levy and sale under execution." The whole of their stock of goods was included in the inventory, and delivered to the assignee, and no selection or claim of any specific property as exempt was made until more than 10 weeks after the assignment was completed. Nor did it appear that the partners did not possess individual property sufficient to satisfy the right to exemptions. Mr. Justice Cassoday, in delivering the opinion of the court, says:

"The partners did not, at any time before the assignment, and while they were owners of the property, sever their interest therein. For more than ten weeks after the making of the assignment neither partner made any specific selection or claim for any such exemption. This was certainly an unreasonable delay, and a waiver of any right to such exemption. Besides, for aught that appears in the record, the respective partners may have individual property sufficient to satisfy any and all claims for exemptions."

In Lamont v. Wootton, 88 Wis. 107, 59 N. W. 456, partners assigned for the benefit of creditors all their property except such as might by law be exempt from seizure on execution or attachment. All of the property was delivered to the assignee, and was included in the inventory without mention of exemptions, and no claims for exemptions were made until nearly a month later, after the assignee had expended labor and money upon the property in caring for and insuring it and getting it ready for sale. It was very properly held that there was a waiver of the right to exemptions from the partnership property. Mr. Justice Newman, in delivering the opinion, says "that the co-partnership had no right to exemptions," which is undoubtedly true. He also says, "The co-partners had no such right in the co-partnership property until after a severance," which is also true. But he does not stop to define what will amount to a severance. It was not necessary, as that had been already settled in O'Gorman v. Fink. The court nowhere intimate any dissatisfaction with the decision in that case, or any intention to qualify it in any way, and I take it that the refusal to allow the exemption is placed upon the other very satisfactory ground that no claim for exemptions was made for nearly a month after the entire property had been in the possession of the assignee, and he had expended labor and money upon it in caring for it, insuring it, and getting it ready for sale. The court say that the case is governed by the decision in Bong v. Parmentier, and clearly in that case the denial to exemptions was placed upon the ground of laches. It does not appear that the court in either case intended to resort to the old technicality that there had been no severance,

which the court had so effectually disposed of in furtherance of justice in O'Gorman v. Fink, or to qualify their former ruling that an agreement among the partners to claim their exemptions amounted to a severance in law so far as to enable the court to allow the exemptions. That would be much too narrow ground for that or any court to stand upon. Let an order be entered instructing the trustee to set apart the exemptions as prayed.