76      SUPREME COURT OF WISCONSIN.      [105.

Oconto City Water Supply Co. vs. The City of Oconto.

OCONTO CITY WATER SUPPLY COMPANY, Respondent, vs. THE CITY OF OCONTO, imp., Appellant.

SAME, Respondent, vs. THE CITY OF OCONTO, Appellant.

*November 11 — December 15, 1899.*

*Municipal corporations: Contracts: Waterworks: Statutes: Implied powers: Limitation on taxation: Constitutional law: Trust fund: Equity: Findings.*

1. In 1890 the city of Oconto entered into a contract with a corporation, organized for supplying water, to build and operate a system of waterworks therein, and to pay it certain annual hydrant rentals. The city charter (ch. 449, Laws of 1869, as amended by ch. 56, Laws of 1882) contained no *direct* authority for such contract, but subd. 11, sec. 3, subch. IV, which was not changed by this amendment, authorized the city " to make and establish public . . . pumps, wells, cisterns, and reservoirs, and to provide for the erection of waterworks for the supply of water to the inhabitants." Sec. 1780, R. S. 1878, as amended by ch. 211, Laws of 1879 (sec. 1780*a*, Stats. 1898), provided that any city or village, not theretofore possessing it, might contract "for water for fire and other purposes" upon such terms as could be agreed upon. *Held*, that the latter statute vested in said city plenary powers in that regard, not before possessed by it with certainty, which were not affected by the fact that the city charter had been amended and re-enacted in 1882; and that the city had power to make such contract when entered into, its charter containing nothing repugnant thereto.

2. The city charter of Oconto (sec. 2, subch. V, ch. 56, Laws of 1882) contained a limitation upon the power to levy taxes for current expenses of not to exceed one half of one per cent. on the assessed valuation, which was $980,000. The contract in question required the annual levy of $6,900 to pay such hydrant rentals. *Held*, that ch. 211, Laws of 1879 (sec. 1780*a*, Stats. 1898), having given the power to make the contract, power to carry out the contract was also given, by implication, to the extent of raising taxes for that purpose beyond the charter limitation.

3. The purpose expressed by ch. 211, Laws of 1879 (sec. 1780*a*, Stats. 1898), being a purely municipal purpose, and the indebtedness incurred thereunder not exceeding the constitutional limit of five per cent. on the assessed valuation of the city, the discretion exercised by the legislature in authorizing the raising of taxes there-

Oconto City Water Supply Co. vs. The City of Oconto.

for beyond its charter limitation does not violate sec. 3, art. XI, Const., making it the duty of that body to organize cities, and to restrict their power to levy taxes so as to prevent abuse in taxation.

4. It being determined that the charter limitations do not stand in the way of carrying out such contract, the fact that it was to run for thirty years is not so great a length of time that it can be said, as a matter of law, that the contract is unreasonable, and hence void.

5. While the money raised by taxation to discharge such contract is a trust fund in the sense that it cannot be diverted to other purposes, equity will only interfere to prevent its threatened diversion; for other relief the plaintiff must be left to his remedy at law; and the intent to divert, alleged in the complaint, being denied by the answer, in the absence of proof a finding that all the allegations of the complaint are true cannot be sustained in that particular.

[6. Whether all charter limitations on the amount of taxes that can be levied to pay rentals for water and lighting are removed by ch. 361, Laws of 1897, not determined.]

APPEALS from judgments of the circuit court for Oconto county: S. D. HASTINGS, JR., Circuit Judge. *Reversed in the action in equity; affirmed in the action at law.*

Two actions, one in equity, and the other at law. In the first action it is alleged that the plaintiff is a corporation organized under the laws of this state for the purpose of constructing and operating waterworks in said city; that in August, 1890, the Oconto Water Company, a corporation, entered into a contract with the city, by a proper ordinance, to build and operate a system of waterworks in said city, which were completed and accepted by the city in September, 1891; that in July, 1892, the privileges and franchises of the Oconto Water Company were sold and transferred to the plaintiff; that said company and this plaintiff have fully complied with the terms of said contract, and the city has accepted the service so rendered, without objection or complaint, and has each year levied and collected the special tax to pay the hydrant rentals, as provided by said contract or ordinance, up to 1898; that, under the terms of the ordi-

nance and subsequent ordinances, the hydrant rental for 1897 amounted to $6,900, payable in semi-annual instalments, the one coming due on January 1, 1898, being the last one that was paid; that on January 14, 1898, the city instructed the city attorney to notify the plaintiff that the city believed the hydrant rental was excessive, and July 5, 1898, a resolution was adopted refusing to pay further rentals, for the reason that the city considered the contract invalid, and the hydrant rentals unreasonably high, and offering to pay the sum of $40 per year per hydrant in lieu of the amount stipulated in the contract; that the city refused to pay the rental due July 1, 1898, amounting to $3,450, which sum it had in its treasury, raised for that purpose; that plaintiff is informed and believes that, unless restrained, the city will divert said fund to other purposes; that the prompt and efficient performance of its duties by plaintiff depends largely upon the performance by the city of its obligations under the contract; that plaintiff is informed and believes that the city does not intend to levy the tax for the year 1898 to pay the rentals due in 1899, but only sufficient to pay the reduced rental at the rate before mentioned; and that the plaintiff has no adequate remedy at law, as the city has no special fund to pay any final judgment rendered, and there would be a multiplicity of actions to obtain relief. The demand for relief is that the city be restrained from diverting the trust fund of $3,450, raised to pay the rental due July 1, 1898, and that the city and its common council be commanded to levy and collect a special tax of $6,900 to pay the rentals coming due in 1899.

The answer set up that, at the time the waterworks were completed and accepted, sec. 2, subch. V, ch. 56, Laws of 1882, being the city charter, provided a limitation upon the power of the common council to levy taxes of not to exceed one half of one per cent. for current expenses, and also a like limitation for all other purposes, except for schools, bridges,

and the payment of principal and interest of any outstanding debts or obligations, and that the city had no other or greater power to levy taxes for the purpose of waterworks or fire protection than as prescribed therein. The answer further sets up the levies made by the city from year to year since the contract was made, which were claimed to be in excess of the power of the city to levy taxes for those purposes under the limitations mentioned, and alleges that because the contract required the city to raise an annual tax of at least $6,500 for thirty years, and said sum was larger than the city had any right to levy, it was *ultra vires* and void. It also set out facts from which it was claimed the contract was unreasonable, and ought to be declared void, and that the city was only liable for the reasonable value of the services rendered. It was also alleged that the plaintiff had an adequate remedy at law, and expressly denied any intention to use or divert the sum raised to pay the rental due in July, 1898.

The court found all the allegations of the complaint to be true; that, at the time of the commencement of the action, the said sum of $3,450 raised by the city to pay the rental due July 1, 1898, was in the city treasury, and that December 10, 1898, the city paid plaintiff, by consent, the sum of $1,835.25, the remainder remaining in the treasury; that to pay the rental due January and July 1, 1899, the city only raised the sum of $4,325.26; that the city had refused to pay the rentals due under the contract, and intends to refuse to pay subsequent rentals, unless the plaintiff accepts the offer to pay at the rate of $40 per year per hydrant. The findings further determine the amount the city has raised each year by taxation for the purpose of paying its rentals, and the valuation of property in the city. The court concluded, among other things, that the plaintiff was entitled to judgment declaring the contract valid, and declaring it the duty of the city, so long as the contract remained in

force and was duly performed by plaintiff, to annually levy and collect a tax sufficient to pay the hydrant rentals as they should become due, and also to levy a tax to make up the difference in the tax levied for the year 1898, and also to a judgment restraining the city from diverting the money on hand, or which might thereafter be raised by taxation for that purpose, to any other purpose than the payment of the hydrant rentals, and requiring the city to pay over the money on hand.

Judgment was accordingly entered for the plaintiff pursuant to these findings.

The action at law is based upon the instalment of hydrant rental that became due January 1, 1899, and which the city refused to pay. The answer is similar to the one in the other suit. Both actions were tried by the court.

In the second action, findings were made for the plaintiff, and judgment entered for the plaintiff.

Appeals from both judgments were taken by defendant.

For the appellant there were briefs by *P. H. Lynch* and *D. G. Classon*, attorneys, and *Sanborn, Luse & Ellis*, of counsel, and oral argument by *A. L. Sanborn* and *L. K. Luse*. They contended, *inter alia*, that the city of *Oconto* had no lawful right to comply with the judgment and therefore the judgment was unauthorized. Sec. 23, subch. V, and subd. 6, sec. 7, subch. X, ch. 56, Laws of 1882; sec. 3, art. XI, Const.; *State ex rel. Marinette, T. & W. R. Co. v. Tomahawk*, 96 Wis. 73; *Campbell v. Kenosha*, 5 Wall. 194; *Bank of Rome v. Rome*, 18 N. Y. 38; *People v. Mahaney*, 13 Mich. 497; *Maloy v. Marietta*, 11 Ohio St. 636; *Hines v. Leavenworth*, 3 Kan. 186; *Bull v. Conroe*, 13 Wis. 233; *Earles v. Wells*, 94 Wis. 285, 298; *U. S. v. Macon*, 99 U. S. 582; *U. S. ex rel. Ranger v. New Orleans*, 2 Woods, 230; *Heine v. Levee Comm'rs*, 1 Woods, 246, 247; *State ex rel. Shackelton v. Guttenberg*, 39 N. J. Law, 660; *Patterson v. Spearman*, 37 Iowa, 36; *Beaulieu v. Pleasant Hill*, 14 Fed. Rep. 222; *Supervisors v. U. S.* 18 Wall. 71; 1

Dillon, Mun. Corp. (3d ed.), § 162. The contract extending for thirty years is unreasonable and void. *Lamar W. & E. L. Co. v. Lamar,* 128 Mo. 188; *Wahlschlager v. Liberty,* 23 Wis. 362; *Kane v. School District,* 52 Wis. 502; *Loan Asso. v. Topeka,* 20 Wall. 655; *Davenport v. Kleinschmidt,* 6 Mont. 502; *Los Angeles C. W. Co. v. Los Angeles,* 88 Fed. Rep. 736; *Brenham v. Brenham,* 67 Tex. 542; *Richmond C. G. L. Co. v. Middleton,* 59 N. Y. 228; *Garrison v. Chicago,* 7 Biss. 488; *Thrift v. Elizabeth City,* 122 N. C. 31; *Saginaw G. L. Co. v. Saginaw,* 28 Fed. Rep. 529; *State ex rel. Att'y Gen. v. Cincinnati G. L. & C. Co.* 18 Ohio St. 262; *Long v. Duluth,* 49 Minn. 280.

*Geo. G. Greene,* for the respondent, contended, *inter alia,* that equity will direct the levy and collection of taxes necessary to provide and maintain the trust fund created for payment of the amounts to become due on the contract. Ch. 361, Laws of 1897; *People v. Canal Board,* 55 N. Y. 394; *Green v. Mumford,* 5 R. I. 472; *Miller v. Drane,* 100 Wis. 1; *Prescott v. Everts,* 4 Wis. 314; *Akerly v. Vilas,* 15 Wis. 401; *Van Rens, elaer v. Van Renselaer,* 113 N. Y. 207, 214; *Kilbourne v. Sup'rs of Sullivan Co.* 137 N. Y. 178; *Fowler v. Brown,* 51 Neb. 414; *Watson v. Sutherland,* 5 Wall. 74; *Lyon v. McLaughlin,* 32 Vt. 423; *Kimberley & Clark Co. v. Hewitt,* 75 Wis. 371; 1 Spelling, Extraordinary Relief, §§ 468, 469, 485, 504; *Whiteman v. Fayette G. Co.* 139 Pa. St. 492; *Ernst v. New Orleans W. W. Co.* 39 La. Ann. 550; *Last Chance W. D. Co. v. Heilbron,* 86 Cal. 1; *Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co.* 118 U. S. 290; *Union Pacific R. Co. v. C., R. I. & P. R. Co.* 163 U. S. 564, 600, *et seq.; Franklin Tel. Co. v. Harrison,* 145 U. S. 459; *Pass v. McRae,* 36 Miss. 148; *Ogden v. Saunders,* 12 Wheat. 332; *Evans v. Virgin,* 72 Wis. 427; *Paine v. Jones,* 93 Wis. 76.

BARDEEN, J. The issues involved in these two actions are so closely allied that they will be disposed of by one opin-

ion.   The paramount question in both cases is whether the contract between the plaintiff and the city is valid or invalid.   The city insists that it is invalid for two reasons: first, because it required the city to levy a greater tax for the purpose of paying hydrant rentals than it was authorized to levy for all current expenses; and, second, because of the charter limitation and the actual necessities of the city, a contract running for thirty years was unreasonable.

1. The city was incorporated by ch. 449, P. & L. Laws of 1869. . By subd. 11, sec. 3, subch. IV, the city was authorized " to make and establish public pounds, pumps, wells,. cisterns and reservoirs, and to provide for the erection of waterworks for the supply of water to the inhabitants." This provision is also contained in the amended charter (ch. 56, Laws of 1882).   It will be observed that this provision gives no *direct* authority to the city to enter into a contract with a private corporation for the purpose of securing a water supply.   For some years prior to the revision of 1878, the law permitted private corporations, organized for the purpose of manufacturing gas, to contract with cities for lighting purposes, and allowed them the privilege of laying pipes in the streets.   The law passed into the revision of 1878 as sec. 1780.   By ch. 211, Laws of 1879, this section was amended by adding thereto the following: " And any corporation formed for the purpose of constructing and operating waterworks in any city or village in this state, may make and enter into any contract with such city or village to supply such city or village with water for fire and other purposes, upon such terms and conditions as may be agreed upon, and may, by the consent of and in the manner agreed upon with the proper authorities of such city or village, use any street, alley, lane, park or public grounds for laying water pipes therein, provided, no permanent injury shall be done to the same; and any such city or village may, by contract duly executed by the proper authorities, acquire the

right to use the water supplied by such corporation, or such portion thereof as it may desire, upon such terms and conditions as may be agreed upon by such corporation and the authorities of such city or village."

The provision now appears in Stats. 1898 as sec. 1780a. It conflicts with no provision of the city charter, in direct terms. It grants express powers to private corporations of the kind mentioned, not only to make contracts, but also to use public streets and grounds. Any city or village not theretofore possessing it was granted authority to contract for water "for fire and other purposes," upon such terms as could be agreed upon. That such powers existed under defendant's charter admits of considerable doubt. In *Ellinwood v. Reedsburg*, 91 Wis. 131, it was said that the general powers in respect to police regulations, the preservation of public health, and the general welfare included the power to use the usual means of carrying out such powers, and that the corporation might properly erect waterworks, and issue its bonds to pay therefor. No case has been cited, and none has been found, which holds that, under such general grants of power, the city may contract with a private corporation, and authorize it to use the streets for its purpose. So while, under its charter, the city might erect its own system, it admits of very grave doubt whether it might grant corporate franchises to a private corporation for that purpose. Whatever doubt there may have been in this respect is resolved into a certainty by the statute quoted, which not only clothes the city with plenary powers in that regard, but also invests the waterworks corporation with authority to occupy the streets, provided no permanent injury was done to the same. Thus, the city became vested with a power it did not possess to a certainty, and which is not in any way affected by the fact that the city charter was amended and re-enacted in 1882. The charter provisions referred to existed in the original act of incorporation, and were simply carried into the

charter of 1882 without change. This effected no change in the law, as will be noted by reference to *Glentz v. State*, 38 Wis. 549, and cases cited. . There being nothing repugnant to the law of 1879 found in the new charter, no good reason can be advanced why this law did not have complete application to the city of *Oconto* when the contract in question was entered into. The authority to make this contract seems clear and beyond question.

We have now reached a point where it becomes necessary to consider what effect, if any, this grant of power has upon the charter limitation as to taxation. .The court has found that the annual revenue of the city, from all sources other than taxes, and applicable to the payment of the hydrant rental mentioned in the complaint, if the city has not the power to raise money sufficient for such payments by taxation, is and has been, since the date of the contract, more than $6,000. This finding has not been successfully challenged, and this fact might render it unnecessary to determine the question above suggested. But it is claimed that the necessities of the city from time to time in the past have required a levy of an amount, with the hydrant rent, in excess of the charter limitation of one per cent., and therefore it is insisted that the contract is unreasonable and void, because it appropriates such a large portion of the city's revenues for so long a time. A further argument is that the hydrant rental is a current expense. The charter limit for current expenses is one half of one per cent. The valuation in the city for 1898 was only about $980,000. The entire amount the city could raise for all purposes, aside from schools, bridges, and debts, is about $9,800, and hence the city cannot carry out the contract. These conditions have developed in recent years. At the time the contract was made, the city's valuation was nearly $1,300,000. That the contract may be burdensome is no reason why it should be declared void. The city has waited nearly eight years before

Oconto City Water Supply Co. vs. The City of Oconto.

making a complaint. It raised no question as to plaintiff's performance, so that there are no equitable considerations involved. Its chief terror seems to be in the supposed fact that the charter limitation as to taxation is being exceeded. The legislature is the fountain of the power of taxation. It may exercise it itself or delegate it. It expressly delegated the power to the city of *Oconto* to raise taxes for certain purposes, not to exceed the limit stated. Ten years later it expressly authorized the city to make a contract for a water supply on such terms as could be agreed upon. At the time the city was incorporated the plan of providing a system of waterworks for small municipalities was little thought of. Fifteen years later the idea developed to such an extent that such plants were common, even among the villages of the state. Now, the proposition is familiar and fundamental that, when authority is given to do a thing, it carries with it, by implication, authority to use the necessary means by which it may be done. This was recognized in *Mills v. Gleason*, 11 Wis. 470, and is the principle which underlies *Ellinwood v. Reedsburg*, 91 Wis. 131. Whether special authority to a municipality to do an act will impliedly repeal, *pro tanto*, existing charter limitations upon the rate of taxation, is a question upon which the authorities are not in accord. Its determination involves a consideration of all the circumstances, and a construction of the two statutes. In the *Reedsburg Case* it was said that providing for fire protection was essentially a work of public utility, and comes within objects for the attainment of which municipal governments exist as much as anything which can be suggested. We then have this condition of things: The city of *Oconto* has a charter limitation which permits it to raise by taxation one half of one per cent. for current expenses. Provision for fire protection is a current expense. As the defendant contends, the ordinary expenses of the city demand the greater part, if not all, of the funds the city can raise under

this limitation. We have an express grant of power from the legislature to the city to enter into a contract with a private corporation for fire protection and water supply. The necessity for fire protection is admitted. The power to secure it is granted, but no express provision is given by which this power may be exercised. We believe the true rule to be that when the legislature confers authority upon a municipal body having power to levy taxes to contract a debt for some specific object, and makes no special provision for its payment, the very act of conferring the power to create the liability by implication clothes the municipal authorities with power to levy the necessary tax to discharge it. *Peoria, D. & E. R. Co. v. People ex rel. Scott*, 116 Ill. 401; *Loan Asso. v. Topeka*, 20 Wall. 655; *U. S. v. New Orleans*, 98 U. S. 381; *Comm. ex rel. Armstrong v. Allegheny Co. Comm'rs*, 37 Pa. St. 277; *Lowell v. Boston*, 111 Mass. 460; 4 Myer, Fed. Dec. § 1163; *Ralls Co. Ct. v. U. S.* 105 U. S. 733. See *State ex rel. Hasbrouck v. Milwaukee*, 25 Wis. 122; Dillon, Mun. Corp. § 741.

There are decisions holding to the point of absolute strictness that the power to tax must be granted in terms, but we are satisfied that the rule stated is more in consonance with reason and justice, and will not lead to harmful results. How, then, does the power to contract affect the charter limitation? This limitation was inserted in the original charter in 1869, when the city was in its infancy, when the means for fire protection were meager, and when the necessities of the city were comparatively few. As the city developed, and its necessities increased, the legislature saw fit to invest it with authority to contract for fire protection. If the contention of defendant is true, we have a grant of power, without any means to exercise it, because the city is prohibited from raising sufficient taxes to pay for its exercise. The current revenues were needed for other necessary purposes. No such absurd result could have been intended by the legis-

lature. In view of the circumstances, we are forced to the
conclusion that, when power to contract was given, power
to carry out the contract was also given by implication to
the extent of raising taxes for that purpose beyond the
charter limitation.

But it is said that this would be in violation of sec. 3,
art. XI, of the constitution, which makes it the duty of the
legislature to organize cities, and to restrict their power of
taxation so as to prevent abuse in taxation. This raises the
vexed question of the right of the courts to interfere with
legislative action under this provision. In *Foster v. Kenosha*,
12 Wis. 616, this court held that, when a municipal corpora-
tion was created without express restriction upon its power
to levy taxes, it could exercise that power only for legiti-
mate municipal purposes, the power of the corporation in
that respect being limited by the object and purpose of its
creation, and that the legislature could not confer an un-
limited power to levy taxes aside from and above what was
necessary and proper for legitimate municipal purposes; and
it was there said: "To prevent all misapprehension, how-
ever, we will say that we do not suppose an act of the legis-
lature creating a municipal corporation, but imposing no
restriction upon the power of such corporation to levy taxes
and borrow money, would necessarily be void for that rea-
son. In such a case, the city authorities would only have
power to levy taxes and raise money to support the local
government and for proper municipal purposes. And, al-
though the wants of municipal corporations are great, they
are not unlimited. The corporation could undoubtedly raise
all the revenues sufficient for strictly municipal expenditures,
but could not raise any and all moneys for every purpose
which might promote the common interest of the city." In
*Dean v. Borchsenius*, 30 Wis. 236, the court discussed the
difficulty of imposing a percentage limit for street improve-
ments. It was held that it was an almost impossible duty

Oconto City Water Supply Co. vs. The City of Oconto.

to perform, and, while not so stated, the conclusion is natural, from the discussion, that, if there was a restriction on the power and not upon the amount to be raised by taxation, the court could not interfere. Many cases have arisen in other states with similar constitutional provisions, relating to the powers and duties of the court in cases where no 'restrictions have been imposed by the legislature. The matter is thus summed up in Cooley, Const. Lim. 637: "These requirements, however, impose an obligation upon the legislature which only its sense of duty can compel it to perform. It is evident that, if the legislature fails to enact restrictive legislation, the courts have no power to compel such action. Whether, in any case, a charter of incorporation could be held void on the ground that it conferred unlimited powers of taxation is a question that could not well arise, as a charter is probably never granted which does not impose some restrictions; and, when that is the case, it must be inferred that those were all the restrictions the legislature deemed important, and that, therefore, the constitutional duty of the legislature has been performed." For a discussion of the conclusions stated, see the following cases: *Bank of Rome v. Rome,* 18 N. Y. 38; *People ex rel. Drake v. Mahaney,* 13 Mich. 481; *Hines v. Leavenworth,* 3 Kan. 186; *Hill v. Higdon,* 5 Ohio St. 243; *Maloy v. Marietta,* 11 Ohio St. 636. The power granted by ch. 211, Laws of 1879, is for a strictly municipal purpose. It would have been better and safer had it contained some restriction other than as to the purpose for which it was to be exercised. But so long as the purpose is expressed, and that being a purely municipal purpose, and the indebtedness attacked does not exceed the constitutional limit of five per cent., this court does not feel at liberty to interfere with legislative discretion, however much we may deprecate this kind of legislation.

2. The argument that the contract is void, because it is unreasonable, is built largely upon the assumed fact that a

very large portion of the city's revenues have been devoted to this one purpose. It being determined that the charter limitations do not stand in the way of carrying out the contract, much of this argument is without foundation. The length of time the contract is to run is not so great that we can say, as a matter of law, it is unreasonable.

3. The right to maintain the suit in equity is challenged because the plaintiff has an adequate remedy at law. The plaintiff insists upon the right to maintain the action on the ground that the rental fund is a trust fund, and that equity will enforce provision and payment, and prevent diversion. There can be no doubt about the proposition that the fund, when raised, is a trust fund, and equity will, in a proper case, interfere to prevent its diversion. This is the tenor of a great many cases cited by respondent's counsel, and no discussion of that fact is necessary. The duty of the city to keep and apply the money raised to the purposes specified in the contract is not disputed. But the contract does not create a trust, within the ordinary legal meaning of that word. The money, when raised, is a trust fund, in the sense that it cannot be diverted to other uses or purposes; but it by no means follows that, because it is alleged that there is an intention on the part of the city to divert this fund, equity will step in to enforce the whole contract. It will prevent the threatened diversion, but otherwise the party must be left to his remedy at law. This is the holding in *Maenhaut v. New Orleans*, 3 Woods, 1, and *Heine v. Levee Comm'rs*, 19 Wall. 655, which we readily approve. The plaintiff alleges an intent to divert. The city enters an express denial. No proof on the question is offered. The court finds all the allegations of the complaint to be true. The defendant excepts to the findings. Under these circumstances, the findings cannot be sustained. It is true that the city denied the validity of the contract, but that fact will not support an inference of intent to divert the money.

The plaintiff had a complete and adequate remedy at law, so far as any fact is shown. It might, as it did, commence its action at law, and have the validity of its contract determined. Then, if the city refuses to make the proper levy, *mandamus* afforded it a complete and adequate remedy. The cases cited in 19 Wall. 655, amply support this conclusion, and nothing more remains to be said.

4. Some stress was laid upon ch. 361, Laws of 1897, as having removed all charter limitations on the amount of taxes that could be levied to pay the rentals. We have purposely omitted considering the legal effect of this legislation, because it raises questions quite difficult of determination, and not necessary to the decision of this case.

*By the Court.*— In the equity suit the judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint. In the action at law the judgment of the circuit court is affirmed.

