HURLEY WATER COMPANY, Appellant, vs. TOWN OF VAUGHN, Respondent.

*September 26—October 21, 1902.*

*Towns and villages: Contracts for water supply: Amendment of statutes: Unreasonable time: Bids.*

1. Ch. 292, Laws of 1883 (subd. 13, sec. 776, Stats. 1898), conferred upon town boards of towns containing unincorporated villages of 1,000 inhabitants all powers conferred upon village boards by ch. 40, R. S. 1878, "and all acts amendatory thereof." Said ch. 40, covering the entire field of village organization and government, gave to village boards power to provide a water supply by the erection of waterworks, but gave no power to contract with a private party for such water supply. Ch. 211, Laws of 1879, gave to domestic waterworks corporations power to contract with villages to furnish water for private and public use. *Held,* that by implication the act of 1879 gave to villages the power to contract with such waterworks corporations, and hence was an act amendatory of said ch. 40, R. S. 1878. Under the act of 1883, therefore, the town boards specified therein had power to contract with waterworks corporations for water supply.

2. A contract by a town for a public water supply for a village therein for thirty years was not so unreasonable as to be beyond the power of the town.

3. The provision in sec. 921, Stats. 1898, that all contracts for the performance of work in a village, costing more than $50, must be let to the lowest bidder, does not apply to a contract with a corporation for a public water supply.

APPEAL from a judgment of the circuit court for Iron county: JOHN K. PARISH, Circuit Judge. *Reversed.*

The substance of the complaint, in addition to a statement of the conditions precedent to the commencement of the action, is as follows: On or about January 1, 1893, plaintiff, a duly organized corporation, contracted with the defendant, one of the duly organized towns of the state, to furnish to it a public water supply for a term of years, and it agreed in consideration thereof to pay plaintiff $4,000 per year for such service. Such service has been fully performed since the date of the contract and plaintiff has received therefor various sums of money; but there is a balance due and unpaid of $1,500, for which, with interest and costs, judgment is demanded.

The answer, among other things, pleaded want of power on the part of defendant to make the contract sued on. The evidence was to the effect that a contract was in form made between plaintiff and defendant, substantially as set forth in the complaint, on the faith of ch. 40, R. S. 1878, and the acts amendatory thereof; that it was made in the usual manner such transactions occur; that a franchise was granted to plaintiff by the defendant in the usual form, giving the former the right to construct and maintain a system of waterworks for the purpose of furnishing water for public and private use in the village of Hurley and the vicinity thereof. The amount alleged in the complaint, to be paid to plaintiff for the public water supply, and the franchise, were duly accepted, and its requirements carried out by plaintiff. There was further evidence establishing plaintiff's cause of action, if the defendant had corporate authority to make the contract. The trial court held that there was no such authority, and accordingly dismissed the complaint and rendered judgment for costs in favor of the defendant.

*A. L. Ruggles,* for the appellant.

. For the respondent there was a brief by *Lamoreux & Shea,* and oral argument by *W. F. Shea.*

MARSHALL, J.  Ch. 292, Laws of 1883, which has, in substance, been embodied into subd. 13, sec. 776, Stats. 1898, conferred on towns and town boards "All powers relating to villages and conferred upon village boards by the provisions of chapter 40, of the Revised Statutes, and all acts amendatory thereof," with certain exceptions not material to this case, conditioned, as to each such town, upon its containing "one or more unincorporated villages, having each a population of not less than one thousand inhabitants," with authority, acting by its supervisors, to exercise such powers "when directed by a resolution of the qualified electors of the town, at the last preceding annual town meeting."  All the conditions requisite to enable respondent to exercise the powers mentioned, existed at the time of the making of the contract in question, the village of Hurley being situated within the town of *Vaughn* and satisfying all the calls of the statute. That part of ch. 40, R. S. 1878, referred to in the act of 1883, and which is retained in the present Revised Statutes, material to this case, is subd. 10, sec. 893.  It confers on village boards power to provide a water supply for the extinguishment of fires by the "erection or construction of pumps, water mains, reservoirs or other waterworks."  It confers no power, by its terms, upon villages or village boards, to obtain a public water supply by contract with a private party.  It is conceded that unless, at the time the contract in question was made, there was some provision of law which in legal effect amended such chapter, giving villages the right to make such a contract as the one before us, then the making thereof was an *ultra vires* act and the judgment appealed from must be affirmed.

By what has been said it will be noticed that the grant to towns regarding the exercise of the powers relating to vil-

lages was not restricted to such as were in 1883 found expressly given in ch. 40, R. S. 1878. It extended to all such powers as were granted by any act amendatory thereof. At that time, and when the contract sued on was made, ch. 211, Laws of 1879, was in force, giving to any corporation formed under any law of this state for the purpose of constructing and operating waterworks in any city or village, power to make a contract to furnish such city or village water for private and public use. It must be conceded that the grant of power to private corporations to contract with village corporations, by implication, gave the latter power to contract with the former. It is claimed on the part of counsel for appellant that the act of 1879 by implication amended ch. 40, R. S. 1878, broadening out the powers of village corporations,—was amendatory of such chapter within the meaning of the act of 1883, giving, by relation to such act, to the respondent town, authority to make a contract with a private party for a water supply for public purposes; and upon a careful consideration of the subject we are constrained to adopt that view.

A statute may be amended or repealed by implication. Courts have oftener to deal with repeal of statutory law by that means than with amendments thereof; but that a change in such law may be as efficiently accomplished in the latter case as in the former, is, we think, too well understood to admit of serious dispute. Of course, whether such change was wrought in any given case presents a question of legislative intent, to be determined by certain well-established judicial rules. *Gilkey v. Cook,* 60 Wis. 133, 18 N. W. 639; *Oleson v. G. B. & L. P. R. Co.* 36 Wis. 383; *Goodrich v. Milwaukee,* 24 Wis. 422. One of such rules, applicable to this case, is that where the later act can stand without necessarily working any change in the earlier one, and there is nothing in such later act clearly indicating a purpose to change the former, it will be presumed that it was the legis-

lative purpose that the law as it existed prior to such later enactment should not be either added to thereby or otherwise disturbed. But when the integrity of the early enactment cannot be reasonably preserved and full effect given to the later one, it will be presumed that the legislative intention was to make the two consistent by so changing the earlier act as to accomplish that result. *Woodman v. Clapp,* 21 Wis. 355; *First Nat. Bank v. Baker,* 68 Wis. 442, 32 N. W. 523; *Peterson v. Baker,* 68 Wis. 451, 32 N. W. 527.

Another rule applicable to this case is that, in determining the real purpose of a legislative enactment, one must look to the whole thereof, to its objects, to its subject-matter, to its effects and consequences. *Harrington v. Smith,* 28 Wis. 43; *Hartford v. N. P. R. Co.* 91 Wis. 374, 64 N. W. 1033. Probably the few familiar propositions referred to will suffice for the purposes of this case.

Applying what has been said to the subject before us, at the time of the enactment of the law of 1879 the authority to incorporate villages and all the powers relating to village corporations organized under the general law, were contained in ch. 40, R. S. 1878. The purpose of that chapter was to cover the entire field of village organization and government. A law thereafter enacted, prohibiting the doing of any act which a village by such chapter was empowered to do, though not referring to such chapter, necessarily worked a *pro tanto* repeal thereof. A change of such powers, whether by adding thereto or taking therefrom by a general law not referring to such chapter in any way, necessarily amended it. By such chapter power was given to villages to provide a water supply by constructing waterworks and operating the same at public expense. The manner of providing a supply of water for public needs was one of the most important subjects with which the legislature had to deal in enumerating the powers which villages might exercise. The construction of waterworks and operation thereof at public expense was the sole

legislative idea in the initial scheme for village government
for obtaining a public water supply. Any addition to that
scheme, it would seem, obviously amended such system,
whether the change was in the form of an amendatory act or
not. That ch. 211, Laws of 1879, now sec. 1780a, Stats.
1898, accomplished such a change, giving to villages the
power to provide a water supply by contract with private par-
ties, seems clear; that is, such chapter changed the village
powers enumerated in ch. 40, R. S. 1878,—it is an act
amendatory thereof, within the meaning of ch. 292, Laws of
1883. Such has been the view taken of the matter in the ad-
ministration of town governments all over the state since
the latter enactment, a period of nearly twenty years. The
object of the law of 1883 evidently was to give unorganized
villages of such character as to be in need of a public water
supply substantially the same as organized villages, through
the medium of the town organizations of which they formed
parts, equal facilities to those of such organized villages.
That object was not attained unless the act of 1879 was, at
the time of the enactment of 1883, a part of ch. 40, an act
amendatory thereof. The legislature must have so regarded
the situation, or reference would have been made to the later
act in express terms. The language "and all acts amendatory
thereof" was probably deemed a sufficient reference to the
law of 1879 to indicate that it was in the legislative mind.
So the object of the enactment of 1883, the practical con-
struction of it and of the act of 1879 as affecting ch. 40,
R. S. 1878—which, after the lapse of twenty years, if there
were any doubt on the subject, would be of importance
(*Travelers' Ins. Co. v. Fricke,* 99 Wis. 367, 74 N W. 372,
78 N. W. 407),—the manifest object of the act of 1879
broadening out the scope of the general powers conferred
upon villages by ch. 40, and every consideration that can
be suggested bearing on the question, point to a legislative

purpose to amend ch. 40 by the law of 1879, and to refer to the latter act in that of 1883 as an amendatory act.

It is contended in support of the judgment that the ordinance upon which the contract in question is based is unreasonable and void because, if the town of *Vaughn* had power to contract with a private corporation to furnish a water supply for the village of Hurley, a bargain binding the town in that regard for thirty years was a manifest abuse of such power. True, there is a limit to the exercise of discretionary power by the governing board of a municipal corporation. The limit is the boundary of reason to be marked by judicial authority in the last resort, giving to the primary instrument of government the benefit, substantially, of all reasonable doubts. *Hayes v. Appleton,* 24 Wis. 542; *Clason v. Milwaukee,* 30 Wis. 316; *Stafford v. C. V. E. R. Co.* 110 Wis. 331, 85 N. W. 1036; 17 Am. & Eng. Ency. of Law (1st ed.) 247; 1 Beach, Pub. Corp. §§ 512–514; Elliott, Railroads, § 1082. This court has heretofore ruled that a contract for water supply for a municipal corporation running thirty years is not unreasonable as a matter of law. *Oconto City W. S. Co. v. Oconto,* 105 Wis. 76, 80 N. W. 1113. That rules this case on the point under consideration.

It is further suggested that by the law of the state all contracts for the performance of work in a village, costing more than fifty dollars, must be let to the lowest bidder (sec. 921, Stats. 1898), and that the contract in question is void because not so let. It is a sufficient answer to that proposition that the law authorizing towns to contract with private corporations to furnish water in villages situated within their boundaries, contemplates that the contract in each case shall be made with a corporation organized, in the main, for the special purpose of furnishing water in the village. Clearly, the legislature did not have in mind that there would be numerous such corporations for one village. In the very nature

of things, while there might be more than one, it is not probable that the legislative idea was that there would be, as a general thing. For that reason, if the furnishing of a water supply to a village is "work" within the meaning of sec. 921, Id., such section is inapplicable to the facts of this case. It is entirely inoperative in such a situation as that presented by a village desiring to contract for a public water supply with a private corporation organized for that purpose. The intent of the legislature was to secure competition. Where, in the very nature of things, competition would be impossible or improbable it cannot be supposed the legislative purpose was to compel the municipality to go through the useless form of a letting to the lowest bidder. It has been so held elsewhere under similar circumstances. *Kilvington v. Superior,* 83 Wis. 222, 53 N. W. 487; *Harlem G. L. Co. v. Mayor,* 33 N. Y. 309; *In re Dugro,* 50 N. Y. 513; *Nicholson P. Co. v. Painter,* 35 Cal. 699.

The foregoing covers all the questions discussed by counsel that seem to call for special treatment in this opinion. The judgment of the circuit court must be reversed and the cause remanded for a new trial.

*By the Court.*—So ordered.