BENNETT, Respondent, vs. TOWN OF NEBAGAMON and others, ·
Appellants.

*May 11—June 10, 1904.*

*Towns: Authority to exercise powers of village boards: Resolution construed: Extent of powers: Issuance of bonds.*

1. Under subd. 13, sec. 776, Stats. 1898, a resolution, adopted by the electors at an annual town meeting, that the town "shall exercise and have conferred upon it all powers relating to villages and which are conferred upon village boards by ch. 40, Stats. 1898," etc., is in effect a direction to, and empowers, the town board to exercise and carry out the powers conferred upon village boards.
2. The powers conferred upon town boards by subd. 13, sec. 776, Stats. 1898, are those only which are specifically conferred upon village boards by ch. 40 itself, and do not embrace those conferred by other statutes.
3. Towns which have been authorized to exercise the powers of village boards under ch. 40, Stats. 1898, including the power to provide a system of fire protection, may, as an incident to such power, raise money for that purpose by the issuance of town bonds in the manner and upon the conditions prescribed by the statutes.

APPEAL from an order and judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. ` Reversed.

This action was begun by respondent, a resident taxpayer of the town of *Nebagamon,* to restrain the officers of the town from exercising the powers conferred by ch. 40, Stats. 1898. The following facts are admitted by the pleadings:

Respondent is a taxpayer in the town of *Nebagamon,* which

is a duly organized town, and he brings this action in behalf of himself and of all other taxpayers of the town. The town contains the unincorporated village of Lake Nebagamon, with a population of more than 1,000. The electors of this town, at an annual town meeting in April, 1902, adopted the following resolution:

"RESOLVED, that the town of *Nebagamon,* Douglas county, Wisconsin, shall exercise and have conferred upon it all powers relating to villages and which are conferred upon village boards by chapter 40, Wisconsin Statutes 1898, excepting those the exercise of which would conflict with the statutes relating to town boards."

On July 16, 1903, at a special meeting of the board of supervisors of the town, a resolution was adopted declaring the necessity of providing fire protection for the village by the purchase of appropriate apparatus and the construction and maintenance of a sufficient waterworks system for extinguishing fires. The resolution provided that bonds to the amount of $3,500 be issued to raise a fund to cover the expense of securing the apparatus and installing the waterworks plant, with a general specification for the proper construction and installation of the plant. The clerk of the town was also directed to give the required notice for a special town meeting for the purpose of voting on the question of issuing these bonds, under ch. 312, Laws of 1903. The resolution further provided that the question of the levy of an annual tax to pay the interest and principal of these bonds when due should be submitted at a special town meeting of the electors, as provided by ch. 309, Laws of 1903, in case a request be made under sec. 788, Stats. 1898. A request of twelve qualified electors of the town was duly signed and filed with the clerk for the calling of a special meeting to vote on the question of issuing bonds as contemplated by the resolution. Notice of a special meeting of the town to vote on the question of issuing the bonds for the purposes above stated, and for the

levy of a tax to pay the principal and interest on the bonds, was given by the clerk, and published in the Nebagamon Enterprise, a weekly newspaper published in the village of Lake Nebagamon, fixing the 11th day of August, 1903, and designating the place where the meeting was to be held. It also appears that the voters, by a majority of the votes cast, adopted the two propositions submitted. Appellants further allege that the town board, at a meeting held August 24, 1903, determined that the fire protection contemplated by the resolution of July 16, 1903, be furnished, and adopted general plans for installing the waterworks plant, and they also adopted a form of bond to be issued as voted by the electors on the preceding August 11th. An injunctional order in this action was served, restraining them from taking any further steps in carrying out the enterprise.

Respondent demurred to the answer upon the ground that it appeared upon the face thereof that the matters alleged did not constitute grounds justifying the town board in proceeding under the resolution of July 16, 1903, and the subsequent proceedings, to install the water plant or issue the bonds to raise money for this purpose. The court sustained the demurrer to the answer, and awarded judgment restraining them permanently from issuing, executing, selling, delivering, or negotiating any of the bonds as contemplated by the board. This is an appeal from the order sustaining the demurrer, and from the judgment perpetually restraining appellants and their successors from proceeding in the matter as stated.

For the appellants there was a brief signed by *Carl M. Wilson,* attorney, and a supplemental brief signed also by *Sanborn & Sanborn,* of counsel, and the cause was argued orally by *Mr. Wilson* and *Mr. A. L. Sanborn.*

For the respondent the cause was submitted on the brief of *T. L. McIntosh,* attorney, and *Ross, Dwyer & Hile,* of counsel.

SIEBECKER, J. The pleadings in the case concede that the electors of the town of *Nebagamon* adopted the resolutions set out in the foregoing statement of facts at the annual meeting held in April, 1902. A controversy exists as to its legal effect. Under subd. 13, sec. 776, Stats. 1898, the electors of a town containing an unincorporated village having a population of not less than 1,000 may by resolution direct that all powers relating to villages which are conferred upon village boards by ch. 40 of these statutes be exercised by the board of such town, excepting those the exercise of which would conflict with the statutes relating to towns and town boards. The resolution adopted by the town's electors directs that the town "shall exercise and have conferred upon it all powers relating to villages and which are conferred upon village boards by" this chapter. The meaning and application of this act of the electors must be ascertained from the facts and circumstances before us. The argument that the resolution, in its effect, simply confers the powers of village boards on the town board, without empowering it to execute them, assumes that the electors sought to do only that which the statute accomplishes, namely, that such powers be conferred upon the town board without the right to exercise them. This interpretation makes the proceeding an idle ceremony, and declares the electors did not thereby purpose to effect any object for the administration of their town affairs. This proceeding of the town electors must be construed in the light of the circumstances under which it was taken. Under the terms of the statute the only proceeding on the part of the town is to direct its officers to exercise these powers. The resolution is couched in language which specifies with sufficient clearness what the electors purposed to accomplish by adopting it. Its terms declare that the town shall exercise all powers conferred upon village boards within the specified chapter of the statutes. The ordinary meaning of the language, when applied to the circumstances before us, signifies

that the town shall carry out or perform the duties imposed upon village boards. It was, in effect, a direction to the town board to exercise all the powers conferred upon village boards in ch. 40, Stats. 1898. *Land, L. & L. Co. v. Brown,* 73 Wis. 294, 40 N. W. 482. Nor can we find any foundation for the claim that these powers, conferred by this resolution, can only be executed by the town through its electors. It has no such restricted effect. Its adoption by the electors clearly empowered the town board to carry out the powers conferred upon village boards. This is the evident inference from the terms of the resolution, under the statute.

It is further contended that towns which are authorized to exercise the powers of village boards under ch. 40, Stats. 1898, have no authority to issue bonds to raise money necessary for establishing a fire department and providing fire protection by the purchase of fire engine and other apparatus and by the erection or construction of pumps, water mains, reservoirs, or other waterworks for the extinguishment of fires. Appellants assert this authority upon two grounds: first, under the powers granted villages to issue bonds by sec. 942, Stats. 1898. It is insisted in argument that the provisions of this chapter are a necessary complement to the powers of villages as enumerated in ch. 40 of these statutes, and should be treated as though a part thereof. Some reliance is placed upon the decision in *Hurley Water Co. v. Vaughn,* 115 Wis. 470, 91 N. W. 971, to support this view. The decision was made under ch. 292, Laws of 1883, and does not meet the present state of legislation on this subject. Subd. 13, sec. 776, of the present statutes, supplants ch. 292, Laws of 1883. Under the former law, town boards could exercise all the powers conferred by ch. 40, and all acts amendatory thereof, while the present law confers only the powers enumerated in ch. 40. This change in the terms of the act conferring such powers must be held to restrict them to those specifically embraced in ch. 40, and they cannot be extended

to powers relating to and conferred upon village boards outside of the limits of this chapter. The town, therefore, could not exercise the power to issue bonds, under sec. 942, Stats. 1898.

The second ground for the exercise of this power is based upon the doctrine that, while municipal corporations can exercise no power except those expressly conferred upon them by law, they may resort to the necessary and customary means in executing the powers granted them. The power to provide a system of fire protection was clearly conferred on the town by sec. 893 of ch. 40. The further inquiry is presented, Is the raising of money by the issuance of town bonds for this purpose the means usually and customarily incident to the proper execution of this important municipal function? The question is, however, not a doubtful one in this state. This court at an early day passed upon it in the case of *Mills v. Gleason,* 11 Wis. 470, and since then has reaffirmed the doctrine of that case in the following cases: *State ex rel. Hasbrouck v. Milwaukee,* 25 Wis. 122; *State ex rel. Priest v. Regents,* 54 Wis. 159, 11 N. W. 472; *Kilvington v. Superior,* 83 Wis. 222, 53 N. W. 487; *Oconto City W. S. Co. v. Oconto,* 105 Wis. 76, 80 N. W. 1113; *Ellinwood v. Reedsburg,* 91 Wis. 131, 64 N. W. 885. In *Mills v. Gleason,* in speaking of the power of a city to make a loan or issue its bonds for a like purpose, the court observes:

"There is no special act and no provision of its [city] charter expressly authorizing it, and it was said that without this the power to borrow money did not exist, and could not be claimed as an incident to the execution of the general powers granted by the charter. The charter does confer power to purchase fire apparatus, cemetery grounds, etc., to establish markets, and do many other things for the execution of which money would be necessary as a means. It would seem, therefore, in the absence of any restriction, the power to borrow money would pass as an incident to the execution of these general powers, according to the well-settled rule that corpo-

rations may resort to the usual and convenient means of executing the power granted; for certainly no means is more usual for the execution of such objects than that of borrowing money."

As to the method of raising money it is also declared that:

"A corporation authorized to contract debts and to execute undertakings requiring money may borrow money for that purpose, and issue its bonds and other obligations therefor."

There is no restriction on town boards to borrow money in the execution of the powers under ch. 40, within the limitations of the law fixing the maximum amount of municipal indebtedness. It obviously follows that they have the right to borrow money to properly carry out this municipal function, and to issue the bonds therefor in the manner and upon the conditions prescribed by the statutes.

*By the Court.*—The order sustaining the demurrer to the answer and the judgment enjoining defendants and awarding costs are both reversed, and the cause is remanded with directions for further proceedings according to law.